IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THOMAS GIULIANI | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-1705 |
| POLYSCIENCES, INC. | : | |

O'NEILL, J.                                                                                         July 31, 2017

## MEMORANDUM

Plaintiff Thomas Giuliani brings the present action against his former employer defendant Polysciences, Inc. alleging that Polysciences discriminated against him based on his age and wrongfully withheld both an earned annual bonus and payment for unused sick/personal time. Defendant now moves to dismiss the complaint against it or, alternatively, to strike certain paragraphs from the complaint. For the following reasons, I will grant the motion in part and deny it in part.

## FACTUAL BACKGROUND

### I. Plaintiff's Background

According to the facts set forth in the complaint,[1] plaintiff Thomas Giuliani has a BS in accounting from Elizabethtown College, and an MBA in finance from the College of William and Mary. Compl., Dkt. No. 1, ¶ 10. He has worked for Deloitte, Haskins & Sells (now

---

[1] When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). In accordance with this principle, my recitation of the facts assumes the truth of the factual statements in the second amended complaint.

Deloitte), Commodore computers, Fox Chase Cancer Center, Robinson Alarm Company (now ADT) and Prophet 21 (now Epicor). Id.

Plaintiff began his employment as chief financial officer of defendant Polysciences, Inc. on September 5, 2006. Id. ¶ 12. During his almost nine years as CFO of Polysciences, plaintiff made numerous contributions to the company's success by, among other things, implementing a budget process, updating the accounting software, implementing major changes to the accounting processes, renegotiating new bank loans, restructuring Polysciences' insurance policies and implementing a monthly report consolidating all relevant information for the company. Id. ¶ 13. Through plaintiff's efforts, defendant was able to improve employee productivity, relations with banks and reporting efficiency, all while decreasing expenditures. Id. ¶ 14. Consistent with these achievements, plaintiff received excellent performance appraisals, id. ¶¶ 15–16, and was instrumental in the company's continued survival. Id. ¶¶ 18–20.

## II.    Alleged Discriminatory Conduct

Sometime in May of 2015, when plaintiff was fifty-eight years old, Polysciences' management, specifically its president and chief executive officer Michael Ott, devised a plan to terminate plaintiff's employment and that of other older workers. Id. ¶¶ 2, 21. Over the three years leading up to plaintiff's termination, Polysciences systematically terminated and/or forced the retirement of several employees over the age of forty. Id. ¶ 24. Of the approximately thirty-one full-time employees close to or over the age of forty who had been employed by Polysciences, twenty-two were either terminated or forced into early retirement. Id. ¶ 25.

As part of its plan to terminate plaintiff's employment due to his age, management allegedly set plaintiff up for failure by assigning him projects with unrealistic deadlines, with little to no assistance and in matters for which he lacked the expertise to accomplish. Id. ¶ 26.

2

For example, on May 6, 2015, Mike Ott asked plaintiff to inventory all equipment not currently being used in all three of Polysciences' buildings and also in a large storage trailer, describe each piece with the proper scientific terms and complete the project in one week without any assistance. Id. ¶¶ 27, 29. Without a background in science, plaintiff was unable to realistically perform this assignment. Id. ¶ 30. In addition, Ott changed the format of the company's financial statements by splitting out a department that was so embedded in another department that it had no relevance to the financials. Id. ¶ 31. This change delayed the publishing of the January and February statements, which Ott blamed on plaintiff. Id. Polysciences terminated plaintiff's employment on June 16, 2015, claiming that he failed to satisfactorily complete his work. Id. ¶ 21.

Polysciences allegedly engaged in a pattern of fabricating pretextual reasons to terminate unwanted employees. Id. ¶ 35. For example, Polysciences fired personal care manager Stacy Walstrum due to her gender, claiming that she failed to complete a number of impossible jobs. Id. ¶ 35. Two other women who held this position were also terminated allegedly due to their gender. Id. ¶ 37. In addition, Polysciences systematically terminated and/or forced the retirement of several employees over the age of forty in the three years leading up to plaintiff's termination, including vice president of personal care, Glenn Sandgren, who was in his fifties when terminated; vice president of technology, Robert Gleim, who was sixty-seven years old when forced into retirement; subsequent vice president of technology, Joel Coret, who was in his forties when terminated; quality control lab manager, Mark Eckert, who was in his sixties when terminated; plaintiff's predecessor, Michelle Crene, who was around fifty when terminated purportedly due to age and gender; and accounts receivable clerk, Ilse Burk, who was eighty-years old when terminated. Id. ¶¶ 38–39.

3

In addition to age discrimination, Polysciences' discriminatory conduct allegedly also extends to sex, political affiliation and sexual orientation. Id. ¶ 40. For example, the complaint asserts that it is "well known" that there is no opportunity for woman to advance at Polysciences and that all upper-level management positions are reserved exclusively for men. Id. ¶ 41. Indeed, when one female employee expressed an interest in applying for a supply chain planning manager position, she was told by another employee that management does not hire women for any meaningful positions. Id. ¶ 42. Further, after meeting with an insurance sales agent regarding insurance for Polysciences, Ott refused to do business with her after discovering that she was a supporter of then-President Barack Obama. Id. ¶ 43. Finally, Ott routinely gave business to Chick-fil-A due to its anti-gay stand. Id. ¶ 44.

### III. Defendant's Alleged Failure to Pay Plaintiff's Wages

Since plaintiff began his employment with Polysciences in 2006, Polysciences gave holiday bonuses to its employees based on the company's profitability for each year. Id. ¶¶ 45–46. Because plaintiff started his employment with Polysciences in September 2006, his holiday bonus was prorated for that year. Id. ¶ 47. Each year thereafter, plaintiff received a bonus of approximately $30,000, including in 2011, which was one of Polysciences' least profitable years due to multiple pending lawsuits. Id. ¶¶ 47–48. In 2014, which was a very profitable year that immediately preceded his termination, plaintiff did not receive a holiday bonus. Id. ¶¶ 49–50.

Pursuant to Polysciences' employee handbook, employees accrued 1.846 hours of personal/sick time per paycheck, or approximately six personal/sick days per year. Id. ¶ 51. Despite Polysciences' policy of not paying employees for their personal/sick time upon termination, Polysciences encouraged its employees to accrue a minimum of 173 personal/sick hours if they wanted to be paid during their first thirty days of short-term disability. Id. ¶ 52. At

the time of his termination, plaintiff had accrued approximately 180 hours of personal/sick time, which, based on his salary, was worth about $21,000. Id. ¶ 53. Polysciences did not give plaintiff the opportunity to use his personal/sick time and did not pay plaintiff for that time. Id. ¶ 54.

## IV. EEOC Investigation

In August 2015, plaintiff filed a charge of discrimination against Polysciences with the Equal Employment Opportunity Commission (EEOC) for terminating his employment based on age. Id. ¶ 55. In response, Polysciences contended that (1) plaintiff's CFO position was eliminated as part of a restructuring of the company and, as such, he was not replaced by an employee outside the protected class; and (2) the two most similarly situated employees to plaintiff, in terms of qualifications and position, were in plaintiff's protected class. Id. ¶ 57.

According to the complaint, however, almost every one of plaintiff's responsibilities as CFO was assumed by Ott's two sons, Ryan Ott (age 31) and Andrew Ott (age 27), who are both well outside of the protected class. Id. ¶ 58. These two men make all of the strategic decisions that plaintiff used to make as CFO. Id. ¶¶ 63–67.

## V. Procedural History

On April 13, 2017, plaintiff initiated litigation against Polysciences, setting forth three causes of action: (1) a claim of age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.; (2) a claim of age discrimination under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, et seq.; and (3) a claim for wages due under the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.1, et seq. On June 13, 2017, defendant filed a motion to dismiss or, in the alternative, to strike paragraphs of the

complaint. Dkt. No. 11. Plaintiff responded on June 27, 2017, Dkt. No. 12, and defendant filed a reply brief on July 10, 2017. Dkt. No. 13.

## MOTION TO STRIKE

### I. Standard of Review on a Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Content is immaterial when it "has no essential or important relationship to the claim for relief." Donnelly v. Commw. Fin. Sys., No. 07–1881, 2008 WL 762085, at *4 (M.D. Pa. March 20, 2008), citing Del. Health Care, Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291–92 (D. Del. 1995). Content is impertinent when it does not pertain to the issues raised in the complaint. Id., citing Cech v. Crescent Hills Coal Co., No. 96–2185, 2002 WL 31002883, at *28 (W.D. Pa. July 25, 2002). Scandalous material "improperly casts a derogatory light on someone, most typically on a party to the action." Id., citing Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. 1988).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09–2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009), citing Johnson v. Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause

prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp., No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) Motions to strike are to be decided "on the basis of the pleadings alone." North Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 159 (E.D. Pa. 1994) (citations omitted). Striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted).

## II.  Discussion

Defendant moves to strike the following paragraphs from the complaint:

> 34.  Polysciences's proclivity for fabricating pretextual reasons to terminate unwanted employees is well known within the company.
>
> 35.  For example, like Plaintiff, Polysciences fired Personal Care Manager, Stacy Walsrum, after she failed to complete a number of impossible jobs.
>
> 36.  M. Walstrum was fired due to her gender.
>
> 37.  Two other women who held this position were also terminated due to their gender.
> . . .
>
> 39.  Other examples of Polysciences's discriminatory conduct based on age include, among others:
>
>> (f)  Plaintiff's predecessor, Michelle Crene (who, at the time, was around 50), like Plaintiff, was terminated due to her inability to complete unrealistic projects. Ms. Crene was terminated because of her age and gender.
> . . .
>
> 41.  For example, it is well known that there is no opportunity for women to advance within Polysciences, and that all upper-level management positions are reserved exclusively for men.

7

>
> 42. In this regard, when one female employee expressed an interest in applying for a Supply Chain Planning Manager position, posted on May 19, 2015, she was told by another employee that management does not hire women for any meaningful positions.
>
> 43. Further, after meeting with an insurance sales agent who was potentially going to provide insurance to Polysciences, Mr. Ott refused to do business with her after discovering that she was a supporter of then-President Barack Obama.
>
> 44. Mike Ott routinely gives business to Chick-fil-A due to its anti-gay stand.

Compl. ¶¶ 34–37, 39(f), 41–44. Defendant now contends none of these averments are plausibly relevant to plaintiff's age discrimination claim as they allege discrimination based on gender or political affiliation.

> This argument invokes Federal Rule of Evidence 404(b), which states, in relevant part:
>
>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
>> . . .
>> This evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). "Rule 404(b) thus prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner." Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 520 (3d Cir. 2003). "Such evidence may, however, be admitted if offered for a proper purpose apart from showing that the individual is a person of a certain character." Id. To be admissible under Rule 404(b), other acts evidence must meet the following four part test:

> (1) the evidence must have a proper purpose under Rule 404(b);
> (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the district

> court must charge the jury to consider the evidence only for the
> limited purpose for which it was admitted.

Becker v. ARCO Chem. Co., 207 F.3d 176, 189 (3d Cir. 2000) (quotations omitted).

"Evidence of an employer's conduct towards other employees has long been held relevant and admissible to show that an employer's proffered justification is pretext." Ansell, 347 F.3d at 521, citing McDonnell Douglas Corp., 411 U.S. at 804 (stating that evidence that employees of another race were treated differently from the plaintiff under comparable circumstances is "[e]specially relevant" to whether employer's proffered explanation is pretextual); Becker v. ARCO Chemical Co., 207 F.3d 176, 194 n.8 (3d Cir. 2000) (citing cases holding that, "as a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination"). Indeed, evidence regarding an employer's "culture" in which it makes employment decisions may constitute circumstantial evidence of discrimination. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 333 (3d Cir. 1995). Therefore, a plaintiff alleging some form of employment discrimination may challenge an employer's explanation by showing "that the employer treated other, similarly situated persons out of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994); accord Abrams v. Lightolier Inc., 50 F.3d 1204, 1214–15 (3d Cir. 1995) (holding that evidence as to a supervisor's attitude toward other older employees and the manner in which he treated them was relevant to whether supervisor "harbored a discriminatory attitude against older workers," making "the existence of an improper motive for the discharge decision more

9

probable."). To that end, acts of discrimination against other employees are admissible to establish or negate discriminatory intent by an employer. Ansell, 347 F.3d at 521.

In the present case, plaintiff contends that the contested allegations are relevant to show both that: "(1) Defendant routinely terminates employees for pretextual reasons when the real reason they were terminated was based on their protected class" and "(2) based on Defendant's propensity for terminating employees because of their age, it is more likely—than it would be without such evidence—that Defendant terminated Plaintiff's employment based on his age." Pl.'s Resp. Opp'n Mot. to Dismiss 11–12. Neither of these enumerated purposes establishes the relevance of these allegations. To the extent plaintiff seeks to establish defendant's "propensity" for discrimination, Federal Rule of Evidence 404(b) explicitly precludes use of "other acts" evidence for such a purpose. See Ansell, 347 F.3d at 520. To the extent plaintiff intends to use the facts in the challenged allegations to establish that any reasons defendant offers are pretext for discrimination, his argument is misplaced. Had the allegations involved age discrimination claims against other employees, the evidence would have been probative of the veracity of any reason proffered by defendant for plaintiff's termination. The challenged allegations, however, relate to discrimination against individuals in protected classes to which plaintiff does not belong. Specifically, paragraphs 34–37 and 41–42 set forth examples of defendant's purported discrimination against multiple female employees due to their gender.[2] Paragraphs 43 and 44 describe instances where defendant chose either not to do business with or to patronize certain individuals/businesses due to their political and moral stances. Such facts are not probative of whether defendant's proffered reasons for terminating plaintiff and other employees were merely

---

[3] Paragraph 39(f) involves an example of an employee who was allegedly discriminated against due to both age and gender. As this factual allegation may conceivably be relevant to plaintiff's age discrimination claim, I will not strike it.

pretext for a discriminatory animus against older employees. To the contrary, these facts would do nothing more than prejudicially paint defendant as a generally discriminatory and morally deficient employer. Such prejudice far outweighs any probative value. See Fed. R. 403. As I find that paragraphs 34–37 and 41–44 involve "forays into immaterial matters" that "may cause prejudice to one of the parties" or otherwise "confuse the issues in the case," I will grant defendant's motion to strike these allegations.

## MOTION TO DISMISS

**I.     Standard of Review on a Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court

11

must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id., quoting Iqbal, 556 U.S. at 679. The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id., quoting Iqbal, 556 U.S. at 679.

## II. Discussion

### A. Age Discrimination Claims (Counts I and II)

Plaintiff's complaint sets forth two counts of age discrimination, one under the ADEA and the other under the PHRA. Defendant seeks to dismiss both counts for failure to state a claim upon which relief may be granted. Taking the complaint's allegations—but for those I have already stricken—in the light most favorable to plaintiff, I find that he plausibly pleads age discrimination claims.

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA provides: "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to otherwise discrimination against such individual . . . with respect to compensation, hire, tenure . . . if the individual . . . is the best able and most competent to perform the services required." 43 Pa. Stat. Ann. § 955(a). "To prevail on a claim of intentional discrimination under the ADEA or the PHRA, "a plaintiff must show that his or her age 'actually motivated' or 'had a

determinative influence on' the employer's decision to fire him or her."³ Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002) (quotations omitted).

In the Third Circuit, ADEA and PHRA claims are litigated according to the burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for Title VII claims. See Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). First, the plaintiff must establish a prima facie case of age discrimination by establishing that (1) the plaintiff is forty years of age or older; (2) that the defendant took an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) he circumstances of the adverse action give rise to an inference of unlawful discrimination. Mitchell v. City of Pittsburgh, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014). If the plaintiff satisfies these elements, the burden shifts then to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." Smith, 589 F.3d at 691. If the defendant presents evidence of a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to show that "the employer's proffered justification for the adverse action is pretextual." Id.

Defendant does not challenge plaintiff's allegations in support of the first three elements, but rather argues that plaintiff has failed to plead, in satisfaction of the fourth element, that he was replaced by younger employees who were otherwise similarly situated to him. At the fourth step, "[i]t is enough that the plaintiff present evidence sufficient to establish an inference that the employment decision was based on the plaintiff's age." Groboxky v. Tammac Corp., 127 F.

---

²    "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." Kautz v. Met–Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

Supp. 2d 610, 620 (M.D. Pa. 2000), citing Danas v. Chapman Ford Sales, Inc., 120 F. Supp. 2d 478, 484 (E.D. Pa. 2000). Pleading facts showing that a defendant replaced the plaintiff with someone sufficiently younger to support an inference of discriminatory animus will satisfy the fourth element. Smith, 589 F.3d at 689; Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013); Prisco v. Methodist Hosp., No. 10-3141, 2011 WL 1288678, at *3 (E.D. Pa. Apr. 4, 2011); see also Davis v. Tammac Corp., 127 F. Supp. 2d 625, 633 (M.D. Pa. 2000) ("Although age discrimination may be inferred from a showing that the plaintiff was replaced by a sufficiently younger person, or that other younger persons were treated more favorably, the Third Circuit has held that a plaintiff does not have to prove replacement or favorable treatment of a person outside the protected class in order to establish a prima facie case of employment discrimination."), citing Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 938 (3d Cir. 1997).

The complaint in this case satisfies the pleading standard for the fourth element. Plaintiff, who was fifty-eight years old at the time of the relevant events, alleges that his "CFO functions were almost exclusively assumed by Mike Ott's two young sons: Ryan Ott (Executive Vice President (age 31) and Andrew Ott (Vice President of Shared Resources (age 27)—both of whom are well outside Plaintiff's protected class." Compl. ¶¶ 2, 61. The complaint goes on to detail the precise functions plaintiff used to perform and how Ryan and Andrew Ott are now jointly performing those functions in plaintiff's stead. Id. Taking these allegations as true, I find that they plausibly give rise to an inference of discriminatory animus.

Defendant argues that plaintiff's claim cannot survive because he has failed to prove that those who replaced him were "similarly situated" to plaintiff such that they "had the same or similar job responsibilities or engaged in similar behavior resulting in different disciplinary

14

action." Def.'s Mem. Supp. Mot. to Dismiss 5. It reasons that Ryan and Andrew Ott did not share the same job responsibilities, particularly given plaintiff's admission that he was required to teach them to perform his duties upon termination. Compl. ¶¶ 65–67. It concludes that these allegations disprove that the Otts were similarly situated to plaintiff.

Defendant's argument misunderstands the nature of plaintiff's claim. Plaintiff alleges termination due to his advanced age. Although plaintiff could establish his prima facie case by showing that he was treated differently than employees similarly situated, he is not required to do so. "[A] prima facie case cannot be established on a one-size-fits-all basis." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999). After all, the concept of a prima facie case was not intended to be "rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 517, 577 (1978). In this type of case, an inference of age discrimination can be inferred by the fact that plaintiff was replaced by a person sufficiently younger. See Def.'s Mem. Supp. Mot. to Dismiss 4, citing Trelenberg v. 21st Century Ins. & Fin. Servs., Inc., No. 12-3603, 2013 WL 3914468, at *13 (E.D. Pa. July 30, 2013). Plaintiff has explicitly alleged that Andrew and Ryan Ott, who are significantly younger than plaintiff, jointly took over plaintiff's CFO duties. Because plaintiff's burden at the prima facie stage is "not onerous," Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 646 (3d Cir. 1988) (citations omitted), I find that such allegations sufficiently establish the fourth element of plaintiff's prima facie case.

### B. Wage Payment and Collection Law Claim

Count III of the complaint alleges that defendant violated the Wage Payment and Collection Law (WPCL), 43 Pa. Cons. Stat. § 260.1, et seq., by (a) failing to pay plaintiff his 2014 holiday bonus of approximately $30,000 in one of defendants' most profitable years, and (b) not allowing plaintiff to use—nor paying plaintiff for—his 180 hours of accrued

15

personal/sick time. Compl. ¶¶ 79–80. Defendant now moves to dismiss this cause of action. As plaintiff has not satisfactorily pled the elements of this claim, I will grant defendant's motion to dismiss on this ground

The WPCL requires employers to pay a separated employee his or her "wages or compensation earned" at the time of separation no later than the employer's next regular payday. 43 Pa. Stat. § 260.5(a). The WPCL defines wages as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation." Id. § 260.2a. Wages also include fringe benefits provided by an employer. Id. The WPCL confers onto employees the ability to institute legal actions to collect wages payable to them by employers. Id. § 260.9a; Deron v. SG Printing, Inc., No. 11-1934, 2012 WL 1902577, at *5 (M.D. Pa. May 25, 2012).

"'[A] prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid . . . . Relief under the WPCL is implausible without [the] existence of a contract.'" Razak v. Uber Techs., No. 16-573, 2016 WL 5874822, at *9 (E.D. Pa. Oct. 7, 2016), quoting Scott v. Bimbo Bakeries, USA, Inc., No. 10-3154, 2012 WL 645905, at *4 (E.D. Pa. Feb. 29, 2012). In other words, "to sustain [a] wage-payment claim[], [the plaintiff] must demonstrate that he was contractually entitled to compensation and that he was not paid." Divenuta v. Bilcare, Inc., No. 09-3657, 2011 WL 1196703, at *9 (E.D. Pa. Mar. 30, 2011). "The contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990). Notably, "[t]he mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." Riseman v. Advanta Corp., 39 F. App'x 761, 765 (3d Cir. 2002).

16

Bonus payments are recoverable under the WPCL. See 43 Pa. Stat. § 260.2a; Cappuccio v. Pfizer, Inc., No. 07-549, 2007 WL 2593704, at *5 (E. D. Pa. Aug. 31, 2007). The burden falls on the plaintiff, however, to prove that the bonus is "earned," *i.e.* that the right to the wage or bonus vested under the terms of employment. Blackwell-Murray v. PNC Bank, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013). The employment agreement between the parties controls the determination of whether wages are "earned" and "due." See Weldon, 896 F.2d at 801.

"Where an employee does not work under a written employment contract or collective bargaining agreement, the employee will have to establish the formation of an implied oral contract to recover under the WPCL." Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015). "Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." Id. In general, there is "an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary." Martin v. Little, Brown & Co., 450 A.2d 984, 987 (Pa. Super. Ct. 1981). "A promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services." Oxner, 132 F. Supp. 3d at 649. Where a complaint does not allege any facts that demonstrate that the employer intended to obligate itself to pay wages or a bonus in exchange for valuable services, a WPCL claim cannot survive. Id. at 650–51 (citing cases).

Plaintiff asserts that, based on the facts and circumstances surrounding his employment with defendant, the parties had an implied contract that: (1) employees receive holiday bonuses,

even when defendant was not profitable; and (2) employees get paid for, or at least get to use, personal/sick time they accrued. He explains that during the first eight years of his employment, he received a holiday bonus, even in defendant's least profitable years, thus establishing a contractual entitlement to that bonus. Moreover, defendant encourages its employees to accrue 173 hours of personal/sick time to be paid during short-term disability, thereby creating an implied contract that plaintiff would either be able to use his personal/sick time or that defendant would pay the plaintiff for the unused time.

As to the bonus payments, plaintiff has not met his burden of plausibly alleging that the bonus was "earned," *i.e.* that the right to the wage or bonus vested under the terms of employment. Plaintiff does not allege the existence of any express contract for payment of a bonus. Moreover, nothing in the complaint allows any inference that an implied contract existed between plaintiff and defendant for payment of a holiday bonus. Plaintiff asserts that "holiday bonuses were based on the company's profitability for each year," not on an employee's particular performance in that year. Compl. ¶ 46. Although plaintiff claims that he received a bonus every year of his employment irrespective of profitability, the complaint is devoid of facts suggesting that the payment of bonuses was anything other than discretionary or that defendant intended to obligate itself to pay bonuses each year. Finally, plaintiff has not demonstrated that he conferred any benefit that would be unjust for defendant to retain without compensating plaintiff; "[p]laintiff has not shown that he did anything more than work to the best of his abilities for defendant as he was engaged to do." Herbst v. Gen. Acc. Ins. Co., No. 97-8085, 1999 WL 820194, at * 9 (E.D. Pa. Sept. 30, 1999). Accordingly, I will dismiss the WPCL claim with respect to the bonus payment.

The same holds true for plaintiff's claim to payment for sick time. According to the explicit language of the employee handbook, which is expressly referenced in the complaint, "[p]ersonal/sick time is not paid out upon termination." Compl., Ex. C, at p. 2. Plaintiff alleges that defendant nevertheless encouraged its employees to accrue 173 hours of personal/sick time to be paid during short-term disability, which allegedly induced plaintiff to accrue 180 hours of personal/sick time with the expectation that he would either be able to use that time or be paid for it. Id. ¶¶ 52–54; Pl.'s Resp. Opp'n Mot. to Dismiss 9. Such an allegation, however, does not create an implied contract upon which a WPCL claim may be based. The employee handbook simply explains that "if [an employee] want[s] to be paid during [his/her] first 30 days of [short-term disability]," an employee "need[s] to save about 173 personal/sick hours." Compl., Ex. C., at p. 2. While that language could be read to encourage employees to accrue personal/sick time as a cushion in the event of short-term disability, it neither undermines the preceding disclaimer of personal/sick time pay-outs nor creates any reasonable expectation that employees will be paid for such accrued time upon termination. Therefore, I will grant the motion to dismiss this portion of the WPCL claim as well.

## CONCLUSION

In light of the foregoing, I will deny defendant's motion to dismiss plaintiff age discrimination claim under the ADEA and PHRA as I find that the complaint sufficiently sets forth facts establishing an inference of unlawful discrimination. I will grant defendant's motion to dismiss plaintiff's claim under the WPCL and defendant's motion to strike paragraphs 34–37 and 41–44 of the complaint.

An appropriate Order follows.